# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into by and between (1) Joseph Sutherlin, Brent Arnett, Lance Williamson, and Joshua Kelly, on behalf of themselves and their representatives, assignees, heirs, executors, and beneficiaries (collectively "Employees") and (2) Phoenix Closures, Inc. (the "Company"), on behalf of itself and its parents, subsidiaries, affiliates, related entities, predecessors, successors, assigns, trustees, and all of their respective officers, directors, members, employees and agents, in their representative as well as personal capacities (collectively the "Phoenix Parties").

## Recitals

A.  Sutherlin filed a complaint against the Company styled *Sutherlin v. Phoenix Closures, Inc.* in the United States District Court for the Southern District of Indiana, Case No. 2:17-cv-00489-RLM-DLP (the "Lawsuit"). As amended, the Lawsuit claims that the Company violated the federal Fair Labor Standards Act ("FLSA") by not paying him overtime pay compensation at time and one-half for hours worked over 40 in a workweek in respect to (i) not counting all time spent in mandatory training in computing his overtime pay and (ii) engaging in non-neutral time card rounding whereby the Company allegedly rounded only in its favor and to the employee's detriment. The Lawsuit also alleges that the Company violated the Indiana Wage Claims Act ("IWCA") by not paying Sutherlin wages for training time and non-neutral rounding during non-overtime hours.

B.  Although the Lawsuit was styled as a collective action under the FLSA, Sutherlin never moved to certify the action as such. Arnett, Williamson and Kelly have filed signed consents to join in the Lawsuit with respect to the FLSA claim only, and also have agreed to join in this Agreement by virtue of having joined in the Lawsuit.

C.  The Company denies all claims.

D.  The Employees and the Company desire to avoid litigation and, by this Agreement, intend to resolve all matters and all claims which Employees have against the Company or the Phoenix Parties arising out of or relating to the Lawsuit or any other claims against them.

Therefore, in consideration of the mutual promises set out below, the parties agree as follows:

## TERMS

1.  **Preamble.** The Preamble and Recitals set forth above are hereby incorporated in and made part of this Agreement.

2.  **Payment Terms and Consideration.** In consideration for the promises in this Agreement, the Company shall pay to Employees wage payments, liquidated damages, and compensation for all unpaid work time Employees allege to have worked and payments for Employees' attorneys fees to their attorneys Hunt, Hassler, Kondras & Miller LLP. The total amount of the gross wage payments, inclusive of liquidated damages and penalties to Employees is Nine Thousand One Hundred Sixty Two Dollars and Fifty Eight Cents ($9,162.58). The total

amount of the payments for Employees' attorneys fees is Forty Thousand Dollars and No Cents ($40,000). Therefore, the total of the settlement payments by the Company is Forty Nine Thousand One Hundred Sixty Two Dollars and Fifty Eight ($49,162.58). The wage payments made to each Employee shall be subject to tax treatment and withholdings required by law based on the tax documents the Company currently has on file. All payments to the order of the Employees, as well as to order of the Employees' attorneys, shall be submitted to Attorney Robert P. Kondras, Jr. of Hunt, Hassler, Kondras & Miller LLP, 100 Cherry Street, Terre Haute, IN., 47807, and shall be apportioned and paid as follows:

(i) **Payment to the order of Joseph Sutherlin:** The Company shall pay to the order of Joseph Sutherlin one check totaling Five Thousand Four Hundred Seventy-Seven Dollars and Sixty-Four Cents ($5,477.64), less withholdings required by law, as compensation for wages and overtime pay he claims he is owed, within two weeks of the Court's approval of this Agreement.

(ii) **Payment to the order of Brent Arnett:** The Company shall pay to the order of Brent Arnett one check totaling One Thousand One Hundred Eight-Four Dollars and Sixty-Eight Cents ($1,184.68), less withholdings required by law, as compensation for overtime pay he claims he is owed, within two weeks of the Court's approval of this Agreement.

(iii) **Payment to the order of Lance Williamson:** The Company shall pay to the order of Lance Williamson one check totaling One Thousand Three Hundred and Forty-One Dollars and Ninety-Two Cents ($1,341.92), less withholdings required by law, as compensation for overtime pay he claims he is owed, within two weeks of the Court's approval of this Agreement.

(iv) **Payment to the order of Joshua Kelly:** The Company shall pay to the order of Joshua Kelly one check totaling One Thousand One Hundred and Fifty-Eight Dollars and Thirty-Four Cents ($1,158.34), less withholdings required by law, as compensation for overtime pay he claims he is owed, within two weeks of the Court's approval of this Agreement.

(v) **Payment to the order of the Employees' Attorneys, Hunt, Hassler, Kondras & Miller LLP:** The Company shall pay Employee's counsel, Hunt, Hassler, Kondras & Miller LLP (EIN # 35-0820078), one check totaling Forty Thousand Dollars and No Cents ($40,000.00), for attorneys' fees in representing Employees in the Lawsuit, to be paid within two weeks of the Court's approval of this Agreement. From that sum, Hunt, Hassler, Kondras & Miller LLP shall pay fees owed to co-counsel, Robert J. Hunt, in the sum of Two Thousand Four Hundred Twenty Dollars ($2,420.00).

(vi) **Acknowledgement.** Upon consultation with their counsel, each of the Employees agrees that the gross sum paid to each of them constitutes good, valid and sufficient consideration for this Agreement and each Employee agrees and confirms that, upon receipt of his payment, he has been properly paid for all alleged hours worked, including alleged overtime compensation, for all alleged

Case 2:17-cv-00489-RLM-DLP   Document 55-1   Filed 09/27/18   Page 3 of 7 PageID #: 253

hours worked in excess of 40 per week, and any alleged liquidated damages stemming from any overtime claims, as well as any other penalties or interest pursuant to federal law or the IWCA, as verified by counsel. Each Employee further acknowledges and agrees that the consideration described above is consideration to which he would not otherwise be entitled and is being paid in exchange for signing and not revoking this Agreement.

3.  **Waiver of Costs and Attorneys' Fees.** In consideration of the promises made by the Company in this Agreement, Employees agree to waive any claims they may have to an award of costs and attorneys' fees, other than as set forth in this Agreement.

4.  **Release and Covenant Not to Sue.** In further consideration of the promises made by the Company, each Employee releases and forever discharges the Phoenix Parties (as defined above) from:

    a. All claims and counterclaims raised or which he could have raised in the Lawsuit;

    b. All claims, actions, causes of action, class or collective allegations and actions, demands, damages, costs, attorneys' fees, loss of wages and benefits, loss of earning capacity, mental anguish, pain and suffering, or other relief permitted to be recovered or related to, or in any way growing out of Employee's employment with, treatment at, wages from, or separation of employment from the Company;

    c. All claims based on occurrences through the date of the parties' execution of this Agreement arising under the Fair Labor Standards Act, as amended; the Indiana Minimum Wage Law; the Indiana Wage Payment Act; the Indiana Wage Claims Act; Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; the National Labor Relations Act, as amended; the Equal Pay Act; the Americans with Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Family and Medical Leave Act, 42 U.S.C. § 1981; the Employee Retirement Income Security Act, as amended; and any other Federal, State, county, or municipal statute, order, regulation, or ordinance; and

    d. All claims arising under common law, including but not limited to tort claims or breach of contract claims (expressed or implied), intentional interference with contract, intentional infliction of emotional distress, negligence, defamation, violation of public policy, wrongful or retaliatory discharge, tortious interference with contract, and promissory estoppel, on account of, or any injury related to or in any way growing out of Employee's employment with, treatment at, wages from, or separation of employment from the Company.

Each Employee intends that this Agreement bar each and every claim, demand, and cause of action described in this Section 4. Excepted from this release is any claim or right which cannot be waived by law, including claims arising after the date this Agreement is executed. In consideration of the promises made by the Company in this Agreement, each Employee further agrees never to institute any lawsuit, complaint, proceeding, grievance or action of any kind at

8878476_3

law, in equity, or otherwise in any court of the United States, state, or municipality against the Company arising from or relating to Employee's employment with the Company, treatment at, wages from, or separation of employment from the Company and/or any other occurrence prior to the date this Agreement is executed

5. **Non-Admission.** Employees agree that this Agreement does not constitute, is not intended to be, and shall not be construed, interpreted, or treated as an admission of any liability or wrongdoing by the Company. Employees further agree that this Agreement shall not be admissible in any proceeding (without the written consent of the Company or unless ordered by a court of competent jurisdiction), except one instituted alleging a breach of this Agreement.

6. **Confidentiality.** Each Employee further agrees that he will keep all terms and conditions of this Agreement confidential, including but not limited to the fact and amount of the payment discussed herein, except that he may make necessary disclosures to his immediate family members, attorney(s), or tax advisor(s), or if ordered to do so by a court of law or directed by lawful subpoena. If inquiries arise concerning this Agreement or the Lawsuit in general by anyone other than Employee's attorneys, tax advisors, or immediate family members, Employee shall simply state only that "the matter has been resolved and cannot be discussed," or words to that effect. Each Employee further agrees that he shall not voluntarily assist, cooperate with, or supply information to, any individual or private-party litigant.

Further, if a court of competent jurisdiction finds that an Employee has violated this Section 5 for any reason, the Company will be entitled to liquidated damages in the amount equal to the sum which the Employee received in payment under this Agreement. Each Employee agrees that the liquidated damages so calculated are not unreasonable and do not amount to a penalty. Each Employee represents that prior to entry into this Agreement he did not divulge any of terms of this Agreement, or any communications leading to this Agreement to any third parties other than the aforementioned excluded persons. Employees further understand that the Confidentiality provision in this Section 7 was a material inducement for the Company entering into this Agreement.

7. **Entire Agreement.** This Agreement shall be construed and enforced in accordance with the laws of the State of Indiana. This Agreement sets forth the entire agreement between the parties and supersedes any written or oral understanding, promise, or agreement directly or indirectly related to, which is not referred to and incorporated in this Agreement. No other promises or agreements shall be binding unless made in writing and signed by Employees and the Company.

8. **Full Knowledge, Consent, and Voluntary Signing.** Each Employee also agrees that he is entering into this agreement knowingly, voluntarily, and with full knowledge of its significance; he has not been coerced, threatened, or intimidated into signing this agreement; and he has been advised to consult with an attorney, and in fact has consulted with his lawyers.

9. **Dismissal of Lawsuit.** Employees and the Company agree that the Lawsuit will be dismissed with prejudice upon execution of this Agreement and the Court's approval of this Agreement. Employee's counsel will file motion seeking the Court's approval of the Agreement.

10.  **Severability.** To the extent that a court of competent jurisdiction holds that any portion of this Agreement is invalid or legally unenforceable, the remaining portions shall not be affected and shall be given full force and effect.

This Agreement may be executed in counterparts. Faxed and/or pdf copies shall be treated as originals.

*[signature]*

JOSEPH SUTHERLIN

Dated: 5/18/18

*[signature]*

BRENT ARNETT

Dated: 5/18/18

_____

LANCE WILLIAMSON

Dated: _____

_____

JOSHUA KELLY

Dated: _____

PHOENIX CLOSURES, INC.

By: *[signature]*

Its: V.P. of H.R.

Dated: 5/21/2018

10. **Severability.** To the extent that a court of competent jurisdiction holds that any portion of this Agreement is invalid or legally unenforceable, the remaining portions shall not be affected and shall be given full force and effect.

This Agreement may be executed in counterparts. Faxed and/or pdf copies shall be treated as originals.

PHOENIX CLOSURES, INC.

By: *Kenneth Bon*

Its: V.P. of H.R.

Dated: 5/21/2018

_____

JOSEPH SUTHERLIN

Dated: _____

_____

BRENT ARNETT

Dated: _____

_____

LANCE WILLIAMSON

Dated: _____

_____

JOSHUA KELLY  *J. Kelly*

Dated: 5-18-2018

5

affected and shall be given full force and effect.

    This Agreement may be executed in counterparts. Faxed and/or pdf copies shall be treated as originals.

PHOENIX CLOSURES, INC.

By: _Kenneth Bax_ (signature)

Its: V.P. of H.R.

Dated: 5/21/2018

_____

JOSEPH SUTHERLIN

Dated: _____

_____

BRENT ARNETT

Dated: _____

_(signature)_

LANCE WILLIAMSON

Dated: 5-17-18

_____

JOSHUA KELLY

Dated: _____